**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **HUDSON HENLEY** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | **CAUSE NO. 3:15-CV-03078-L** |
| **LOVE INSURANCE GROUP, LLC AND** | § | |
| **AMERICAN BANKERS INSURANCE** | § | |
| **OF FLORIDA** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S MOTION FOR,**
**AND BRIEF IN SUPPORT OF, SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Plaintiff, Hudson Henley, Movant herein, and requests the Court to enter Summary Judgment in favor of Plaintiff on his breach of contract claim against Defendant Love Insurance Group, LLC (hereinafter Defendant or Love Insurance), and in support thereof, shows the Court the following:

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for a summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.

A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Id.* The non-moving party must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

256-57 (1986).

There are no genuine issues of material fact in this case; therefore, the Court may decide this case on the summary judgment evidence included in the appendix to this motion, which evidence is incorporated herein by reference.

## SUMMARY JUDGMENT EVIDENCE

In support of this Motion, Defendants rely upon, and incorporate by reference herein, the following evidence:

| | |
|---|---|
| **Exhibit "1"** | Excerpts from Ross Love's Deposition |
| **Exhibit "2"** | Excerpts from Hudson Henley Deposition |
| **Exhibit "3"** | Declaration of Curtis Hodge and Public Adjuster's Report of Damages |
| **Exhibit "4"** | Excerpts from Love Insurance's Supplemental Initial Disclosures |
| **Exhibit "5"** | Excerpts from American Bankers Insurance of Florida's Production Documents |
| **Exhibit "6"** | Declaration of Hudson Henley |

## BACKGROUND

Plaintiff filed this case against Love Insurance and American Bankers Insurance of Florida ("ABI") on August 18, 2015 (Dkt. 1-10). ABI removed the case to this Court on September 22, 2015 (Dkt. 1). Plaintiff's filed claims against Love Insurance for breach of contract, negligent misrepresentation, promissory estoppel, and breach of fiduciary obligations (Dkt. 1-10). Love Insurance filed its original answer, a simple general denial, in state court on September 10, 2015 (Dkt. 1-5). Love Insurance has not amended its original answer or joined any additional parties. Love Insurance has not filed any crossclaims or counter-claims. Plaintiff

only seeks summary judgment on his breach of contract claim in this motion.

## FACTS

### 1. Liability

On November 17, 2014, plaintiff completed the purchase of a 60 unit apartment complex in Dallas County, Texas known as Sonoma Apartments.[1] The Sonoma Apartments actually consist of 8 separate addresses, and 7 distinct structures, located at 704, 706, 708, 710, 712, 714, and 718 N Plymouth Rd., Dallas, TX 75211.[2] Plaintiff paid $1,200,000.00 for the property, financing $975,000.00 of the purchase price through Happy State Bank.[3] As a condition of loan, Happy State Bank required plaintiff to obtain and carry $975,000.00 in flood insurance for Sonoma.[4]

To obtain the coverage, plaintiff contacted John Sheetz, an insurance agent employed by Love Insurance Group, LLC.[5] John Sheetz was already familiar with Sonoma Apartments because he was in the process of obtaining hazard insurance for the property.[6] After discussing the need for obtaining flood insurance, John Sheetz, in the course and scope of his employment, solicited a quote for a FEMA flood policy from American Bankers Insurance.[7] To cover the $975,000.00 in needed flood coverage, John Sheetz made the decision to apply for one single flood policy at the maximum permissible limit of $500,000.00, and one excess of loss policy for $475,000.00.[8] On November 14, 2014, John Sheetz executed a "Certificate of Property Insurance" on affirming to Happy State Bank that Love Insurance had procured for plaintiff

---

[1] Pl. App. 000038.
[2] Pl. App. 000458 and 000502.
[3] Pl. App. 000452-000453 and 000458.
[4] Pl. App. 0000038, 000452-000453.
[5] Pl. App. 000037.
[6] Pl. App. 0000040-000041.
[7] Pl. App. 000017.
[8] Pl. App. 000550-000551.

$975,000.00 of flood coverage.[9] Defendant sent an invoice to plaintiff on November 14, 2014 for $18,356.78 to secure hazard and flood insurance on the Sonoma Apartments.[10] The premium for the $500,000.00 FEMA policy was $4,973.00[11], and the premium for the $475,000.00 excess policy was $1,935.59,[12] totaling $6,908.59 in flood premiums. The invoiced premium for the $975,000.00 in flood insurance was, in actuality, $6,909.00.[13] November 17, 2014 plaintiff paid defendant premiums in the amount of $18,356.78, which included the $6,909.00 premium amount for the $975,000.00 in flood insurance coverage.[14]

As plaintiff subsequently learned, John Sheetz was not familiar with FEMA flood policy guidelines, did not know what he was doing, and ignored multiple warnings that he was not writing the flood policies correctly.[15] Specifically, FEMA guidelines permit only one building per policy.[16] In this case, Sheetz submitted one application to FEMA listing the property address as 704-718 N Plymouth Rd., Dallas, TX 75211 to cover 7 separate structures.[17] Listing a string of addresses for multiple structures is, in fact, not the proper procedure to apply for flood insurance, and conflicts with FEMA guidelines. Because the application failed to identify that the property had multiple structures, only multiple addresses, plaintiff was deprived of the full benefits of the full $500,000.00 FEMA policy as detailed below.

More importantly, this fact was relayed to Love Insurance at least four times on November 14, 2014, prior to the closing of the sale. On November 14, 2014 at 12:33 pm Justin Bray at Happy State Bank emailed John Sheetz that "[t]here are 7 structures on this property and

[9] Pl. App. 000450.
[10] Pl. App. 000491.
[11] Pl. App. 000545.
[12] Pl. App. 000486.
[13] Pl. App. 000491.
[14] Pl. App. 000018-000020.
[15] Pl. App. 000017 and 000460-0000463.
[16] Pl. App. 000018 and 000502.
[17] Pl. App. 000005-000008 and 000480.

we're needing a policy for each structure, with all 7 of them together equaling no less than $975,000.00."[18] On November 14, 2014 at 12:59 pm Justin Bray again told John Sheetz that the property "need[ed] seven [policies], one for each structure."[19] On November 14, 2014 at 1:38 pm Carol Langford at Happy State Bank reiterated to John Sheetz that "[the bank] need[s] a separate policy on each building."[20] Finally on November 14, 2014 at 1:55 pm Justin Bray again told John Sheetz that "[a]ccording to the NFIP[21] regulations that [the bank] ha[s] to abide by, each [flood insurance] policy only insures one structure, so [the bank] ha[s] to have seven policies, one for each structure."[22] Despite being told repeatedly that the one flood policy and one excess policy was not the proper way to write the flood coverage, John Sheetz still proceeded to obtain inadequate flood coverage on the property.

Unfortunately on May 28, 2015 the Sonoma Apartments flooded, causing extensive damage to all 7 structures on the property.[23] Plaintiff filed a claim on his flood insurance shortly thereafter. American Bankers Insurance of Florida ("ABI") hired a public adjuster named Mark Bruck to evaluate the damage. During the adjustment process, ABI informed plaintiff that the FEMA flood policy Love Insurance wrote for $500,000.00 was invalid because FEMA guidelines mandate one policy per building/structure.[24] In danger of losing all of his underlying coverage on the property, ABI offered to reform the incorrectly written policy to cover 1 structure.[25] Plaintiff accepted, and the faulty flood policy was reformed to cover addresses 716

---

[18] Pl. App. 000462.
[19] Pl. App. 000461.
[20] Pl. App. 000461.
[21] NFIP is an acronym for the National Flood Insurance Program administered by FEMA. *See* https://www.fema.gov/national-flood-insurance-program-laws-regulations.
[22] Pl. App. 000461.
[23] Pl. App. 000063 and 000065-000067.
[24] Pl. App. 000056-000058.
[25] Pl. App. 000096 and 000506-000508.

and 718 N Plymouth Rd., 2 buildings that shared a common wall.[26] The "common wall" distinction was important because the 2 buildings at 716 and 718 N Plymouth Rd. could be considered 1 structure for purposes of the FEMA one policy, one building rule.[27] By combining the 2 buildings, plaintiff was able to maximize his recovery under the deficient flood policy.[28] ABI reformed the flood policy to cover 1 structure for $500,000.00, but the damage to Sonoma Apartments as reformed was only estimated by the adjusted at $125,131.48 because it excluded 5 structures that did not have individual flood policies.[29] Again, Love Insurance knew the policy was not properly written or obtained before the closing. In fact, Justin Bray told John Sheetz exactly how to properly write the policy: "Instead of doing it as one policy, we need seven, one for each structure, so if you can only write policies in increments of $100, each policy needs to be for no less than $139,300.00."[30] Had Love Insurance simply followed the lender's reasonable request, this entire lawsuit would have been avoided. At this stage of the claims process, the plaintiff had extensive water damage to 7 structures and only enough underlying coverage to repair 2 structures, the insurance coverage was inadequate and not what plaintiff contracted for.

The one building per policy rule and resulting inadequate coverage was exacerbated by another critical error. As previously discussed, plaintiff still paid for $475,000.00 in excess flood coverage. Facing the lack of adequate coverage under the single FEMA policy, the $475,000.00 in excess flood coverage should have been available to coverage a significant portion of the damage to the property. However, Love Insurance never obtained the $475,000.00 excess policy, even though plaintiff paid for the coverage. As Ross Love, the corporate representative for Love Insurance Group, testified in his deposition:

---

[26] Pl. App. 000096.
[27] Pl. App. 000096.
[28] Pl. App. 000096 and 000506-000508.
[29] Pl. App. 000506-000508.
[30] Pl. App. 000461.

Q Okay. Now, I want to -- I just have a little bit more. I -- I know that we talked about the excess. I want to be clear. Do you know for a fact, as we sit here today, that no excess policy was written on Sonoma Apartments in November of 2014?
A That's correct.
Q There is none?
A That we're aware of.
Q Okay. Then if there was no excess policy written, how were premiums paid for the policy that was not written?
A Premiums are put in a trust account and moved out as the policies were written.
Q Okay. You would agree with me that the premiums for the excess policies were written -- or was -- was paid in this case?
A Absolutely.
Q So I guess my question is how did we not get a -- from premiums paid to a policy issued? Did John Sheetz drop the ball somewhere?
A I was told that the policy had been issued, that I was aware of after the fact.
Q Okay. So did John -- I guess, did John Sheetz miss something and fail to get the excess policy?
A Yes, sir.[31]

Love Insurance admitted it failed to procure flood coverage plaintiff contracted and paid for. This fact is not in dispute. But for the failure to procure the excess policy, plaintiff lost an additional $475,000 in flood coverage plaintiff paid for in 2014.

In sum, due to defendant Love Insurance's mistakes, plaintiff only obtained approximately 12.8% of the insurance coverage he contract and paid for.

**2. <u>Damages</u>**

The public adjuster hired by ABI did not do a full adjustment of all the property damage done to the Sonoma Apartments.[32] Due to the fact that 7 structures could not be covered under

[31] Pl. App. 000018-000019.
[32] Pl. App. 000552-000553.

one flood policy, ABI adjusted the claim for 1 structure.[33]

To get a complete picture, plaintiff hired retained National Adjustment Services, Inc. ("NAS") to do a full adjustment of the flood damages. According to James Amos, the public adjuster with NAS, the total damages to the property as a result of the flood is estimated at $847,520.10.[34] The breakdown of the damage is $684,082.38 for materials and equipment, $22,174.66 in material sales tax, $70,631.53 overhead and $70,631.53 in profit.[35] Sales tax, overhead and general contract profit for the repairs is recoverable under a valid FEMA flood policy.[36]

## ARGUMENTS

### 1. Liability

"An insurance agent agreeing to obtain insurance owes a legal duty to obtain same and, if he cannot, to notify his principal of failure." *Stinson v. Cravens, Dargan & Co.*, 579 S.W.2d 298, 299-300 (Tex. Civ. App.—Dallas, 1979) (*citing Burroughs v. Bunch*, 210 S.W.2d 211 (Tex. Civ. App.—El Paso 1948, writ ref'd)). Plaintiff filed a claim against defendant seeking affirmative relief for Breach of Contract. Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015) (*citing Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.-El Paso 2009, no pet.)). Thus, plaintiff is required to prove the existence of a valid contract, performance or tendered performance by the plaintiff, breach of the contract by the defendant and damages to the plaintiff resulting from that breach.

---

[33] Pl. App. 000500-000502.
[34] Pl. App. 000346.
[35] Pl. App. 000345-000346.
[36] Pl. App. 000500.

In this case, there is clearly, and undeniably, no genuine issue of material fact as to any element of plaintiff's breach of contract claim. Plaintiff retained Love Insurance to obtain $975,000 in flood coverage for the Sonoma Apartments. Plaintiff paid the premiums for $975,000 in flood coverage. Defendant breached the contract with plaintiff by failing to procure the entire $475,000 in excess coverage, and failing to obtain $500,000 in underlying coverage for the 7 structures on the property. The flood that occurred on May 28, 2015 caused significant damage to plaintiff's property, and the only insurance covering the flood covers only a fraction of the total damages. There is no genuine issue of material fact on any of these elements.

**2. Damages**

**a. Property Damage**

"The measure of the liability for [an agent's] failure to procure insurance is the amount that would have been due under the insurance policy [if] it had been obtained." *Smith-Reagan & Associates, Inc. v. Fort Ringgold Limited*, 2015 WL 1120398, at *1 (Tex. App.—San Antonio, 2015) (*citing Scott v. Conner*, 403 S.W.2d 453, 457 (Tex. Civ. App.—Beaumont 1966, no writ)).

In this case, if the insurance policies were properly procured, plaintiff would have had $975,000 in flood coverage for 7 structures. In fact plaintiff effectively had $125,131.48 in flood coverage on 1 structure, giving plaintiff a cash recovery of $112,054.78 after deducting deprecation and the policy deductible.[37] After deductions, plaintiff had an insurance deficit of $862,945.22.[38] Based on the estimate of plaintiff's public adjuster, the full amount of the flood damage for all 8 buildings is $847,520.10.[39] Therefore, plaintiff is entitled to a judgment from defendant for $735,465.32[40] in property value damages.[41]

---

[37] Pl. App. 000506.
[38] $975,000.00-$112,054.78.
[39] Pl. App. 000345.
[40] $847,520.10-$112,054.78.

**b. Economic Damages**

Further, but for the failure to procure insurance, plaintiff would not have had to independently hire a public adjuster to estimate the damages to the Sonoma Apartments. Plaintiff agreed to pay 8% of the total claim payments to National Adjustment Services, Inc. for the public adjustment.[42] Thus, plaintiff has an estimated additional $67,801.61 in economic damages.[43]

**c. Prejudgment Interest**

This case is before the Court because plaintiff sued ABI. Because ABI's actions were conducted in its fiduciary capacity as the fiscal agent of the United States, 42 U.S.C. §4072 confers exclusive jurisdiction to this Court on claims against ABI. However, there is no federal claim or statute at issue in this motion. Plaintiff's claims against Love Insurance are based entirely on Texas state law claims, and this motion is based on a breach of contract between Texas residents. When "a cause of action arises out of a federal statute, federal law governs the scope of the remedy available to plaintiffs, including whether prejudgment interest is to be allowed and at what rate." *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 983 (5th Cir. 1991). When there is no federal "law setting prejudgment interest rates, courts look to state law for that purpose." *Perez v. Bruister*, 2016 WL 2343009, at *18 (5th Cir. 2016) (*citing Hansen*, 940 F.2d at 984–85)).

In this case, plaintiff is entitled to prejudgment interest on his property damage as provided by Texas Finance Code § 304.102.

---

[41] Plaintiff's single FEMA policy contained a $5,000 deductible, *see* Pl. App. 000506, but the excess policy of $475,000 did not have any deductible. This makes it difficult to estimate how much of a deductible plaintiff might had paid if the insurance was correctly obtained from inception. For example, if Love Insurance originally obtained 7 policies, as it eventually did, the deductible for each policy would probably have been approximately $2,000; making the recoverable amount $9,000 less than $735,465.32.

[42] Pl. App. 000552-000553.

[43] $847,520.10 * 8%.

**d. Attorney Fees**

Pursuant to Texas Civil Practice & Remedies Code § 38.001, plaintiff is entitled to recover attorney's fees on his breach of contract claim. Plaintiff is still incurring attorney fees, and requests that a conditional order awarding attorney fees be issued, and that the Court determine the appropriate amount of attorney fees after judgment has been entered.

## DEFENSES, CROSSCLAIMS, COUNTERCLAIMS AND JOINDER

Love Insurance has not pled any affirmative defense, or filed any crossclaim or counterclaim that would preclude summary judgment in this cause (Dkt. 1-5). Per the Court's December 1, 2015 order, "all motions requesting joinder of additional parties and amendment of pleadings shall be filed" by February 29, 2016 (Dkt. 7). The only defense Love Insurance has offered to limit or mitigate liability is the claim that ABI is somehow liable because it did not reject the application that listed the addresses as 704-718 N Plymouth Rd.[44] However, any claim Love Insurance has against ABI is irrelevant to whether Love Insurance breached its contract with plaintiff. Moreover, Love Insurance has not joined another party or amended its pleadings. As such, Love Insurance does not have any claims filed against ABI that would, nor could, that affect the relief sought in this motion.

## ALTERNATIVE RELIEF

Liability is crystal clear, and there is no material dispute on plaintiff's claim for breach of contract. However, if the Court is not inclined to rule on damages, plaintiff request that the Court enter a judgment finding defendant Love Insurance liable to plaintiff for breach of contract.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, plaintiff prays that the Court enter

[44] Pl. App. 000496-000497.

judgment against Defendant Love Insurance Group, LLC, for breach of contract, or alternatively, should the Court find some facts to be controverted, plaintiff be granted a partial summary judgment specifying those facts that appear to be without substantial controversy; pre-judgment and post-judgment interest as provided by law; Costs of suit; and plaintiff be granted such other and further relief, special or general, at law or in equity, as may be shown that plaintiff is justly entitled to receive.

            Respectfully submitted,

            /s/ R. Lane Addison
            R. Lane Addison
            Texas Bar No. 24059355
            Email: rladdison@henleylawpc.com
            **HENLEY & HENLEY PC**
            3300 Oak Lawn Ave, Suite 700
            Dallas, Texas 75219
            Tel. (214) 821-0222
            Fax. (214) 821-0124
            Attorney for Plaintiff
            Hudson Henley

**CERTIFICATE OF SERVICE**

I certify that on July 6, 2016 a true and correct copy of Plaintiff's Motion for Summary Judgment was served to each person listed below by the method indicated.

/s/ R. Lane Addison
R. Lane Addison

Jonathan D.F. Nelson
Attorney for Love Insurance Group, LLC
Hill Gilstrap, P.C.
1400 West Abram Street
Arlington, Texas 76013
TEL: (817) 261-2222
FAX: (817) 276-4944
Electronically through the Electronic Filing Manager

William T. Treas
Attorney for American Bankers Insurance of Florida
Nielsen, Carter & Treas, LLC
3838 N. Causeway Blvd, Suite 2850
Metairie, Louisiana 70002
TEL: (504) 837-2500
FAX: (504) 832-9165
Electronically through the Electronic Filing Manager
