IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HUDSON HENLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-3078-L |
| | § | |
| LOVE INSURANCE GROUP, LLC,[1] | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion for Summary Judgment[2] (Doc. 12), filed July 6, 2016. After careful consideration of the motion and brief, response and brief, reply, appendices, record, hearing transcript, and applicable law, the court **denies in part** and **grants in part** Plaintiff's Motion for Summary Judgment.

**I.     Procedural and Factual Background**

Plaintiff Hudson Henley ("Plaintiff" or "Henley") filed this action against Defendants Love Insurance Group, LLC, ("Defendant" or "Love Insurance") and American Bankers Insurance Company of Florida ("ABI") on August 18, 2015, in the 14th Judicial District of Dallas County, Texas. On September 22, 2015, ABI removed this action to federal court, contending that it arises under the National Flood Insurance Act, 42 U.S.C. § 4001, *et seq.* Defendant consented to removal of the action. On July 7, 2016, ABI was dismissed from this action. Plaintiff's remaining claims against Defendant include breach of contract, negligent misrepresentation, promissory estoppel,

---

[1] In several of Defendant Love Insurance Group, LLC's filings, the caption incorrectly includes Veracity, Inc., who has never been a party to this action.

[2] Hudson Henley designates his motion as one for summary judgment; however, the correct designation should be a motion for partial summary judgment, as he does not move on all claims or issues.

**Memorandum Opinion and Order - Page 1**

and breach of fiduciary obligations. Plaintiff only moves for summary judgment on his breach of contract claim. On February 1, 2017, the court held a hearing to clarify the parties' respective arguments related to Plaintiff's Motion for Summary Judgment.

At the hearing, the parties agreed to the following facts. On November 17, 2014, Plaintiff purchased the Sonoma Apartments in Dallas County, Texas. The apartment complex contained several buildings with eight different addresses: 704, 706, 708, 710, 712, 714, 716, and 718 N. Plymouth Road, Dallas, Texas 75211 (hereinafter "the Property").[3] Plaintiff financed $975,000 of the $1.2 million purchase price through Happy State Bank, and, as a condition of the loan, Happy State Bank required Plaintiff to obtain and carry $975,000 in flood insurance on the Property. Henley hired Love Insurance's agent John Sheetz to help him obtain flood insurance for the Property.

Mr. Sheetz was to secure two separate Federal Emergency Management Agency ("FEMA") flood policies from ABI. The first policy was for the maximum permissible limit of $500,000, and the second policy was for $475,000 to cover the excess of loss expenses. Plaintiff paid the premiums to secure both policies. Mr. Sheetz then submitted one application to FEMA for the $500,000 policy that listed the address for the Sonoma Apartments as "704-718 N. Plymouth Road, Dallas, Texas 75211" to cover all of the physical structures that were encompassed within those eight addresses.

---

[3] In both parties' summary judgment documents and at the hearing on the motion, each party states that the Sonoma Apartments consist of seven different structures with eight separate addresses; however, there appears to be some confusion as to how the buildings are counted. The parties agree that two of the separate buildings share an adjoining firewall and there is a separate building for the HVAC. The parties are unsure about whether to count the adjoining building as one or two buildings and whether to count the HVAC building. As the parties agree that all of the buildings were to be covered by insurance, this disagreement is of no moment.

**Memorandum Opinion and Order - Page 2**

The parties entered into an implied contract when Plaintiff hired Defendant to secure primary and excess loss insurance on all of the Sonoma Apartment buildings. The parties agree that the terms of the implied contract were that Henley would pay the premiums to Defendant, and in exchange he would receive $975,000 of insurance coverage. With respect to the excess loss policy for $475,000, Love Insurance concedes that, despite Plaintiff paying the premium, it never procured the $475,000 excess loss policy. On May 28, 2015, the Sonoma Apartments flooded, and Plaintiff contends that he has had difficulty in collecting on the insurance policy. The parties disagree as to whether Love Insurance breached its implied contract with Plaintiff; and, even if a breach occurred, the parties disagree as to the amount of damages that Plaintiff has incurred.

On March 18, 2015, Defendant forwarded to Plaintiff an insurance policy that was underwritten by ABI, and listed the Property to be insured as "704-718 N. Plymouth Road, Dallas, Texas 75211." According to Plaintiff, Defendant wrote the policy incorrectly by submitting one FEMA application to ABI for the $500,000 policy to cover all of the buildings. Plaintiff contends that submitting one policy for all of the buildings violated FEMA policy and did not secure the insurance coverage to which the parties agreed. Plaintiff further contends that Defendant's employee, Mr. Sheetz, was unfamiliar with the FEMA guidelines that require only one building per policy; ignored multiple warnings that he was writing the flood policies incorrectly; and ultimately failed to secure the $975,000 worth of flood insurance that Plaintiff paid his premiums to receive. Moreover, Plaintiff contends that Mr. Sheetz's errors constituted a breach of the parties implied contract, which caused him to be deprived of the full benefit of the $975,000 insurance policy.

Love Insurance contends that it did not breach the contract with respect to procuring the $500,000 policy covering the Sonoma Apartments, as it listed an address for each building on its application for flood insurance from ABI. Defendant contends that, based on the application it submitted, ABI issued a valid insurance policy to Plaintiff for "704-718 N. Plymouth Road," and that policy was effective when the flooding occurred. Defendant contends that once it secured the valid policy from ABI it performed its obligation under the implied contract. Further, Defendant contends that ABI approached Plaintiff about correcting the alleged errors in the policy only after the flood occurred, and this is an attempt by ABI to improperly limit payment to only one of the multiple buildings listed on the policy.

Plaintiff has moved for partial summary judgment on his breach of contract claim. He contends that he is entitled to summary judgment as a matter of law because Defendant breached their implied contract when it did not secure $975,000 of insurance coverage for the Sonoma Apartment buildings. Defendant counters that it did not breach the implied contract, as it secured an insurance policy from ABI for $500,000 in primary coverage to cover each of the Sonoma Apartment buildings. Further, Defendant contends that there is no summary judgment evidence as to whether the $475,000 excess loss policy would have applied; therefore, Plaintiff cannot prove it is entitled to summary judgment on his breach of contract claim.

## II.     Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

**Memorandum Opinion and Order - Page 5**

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Plaintiff's Breach of Contract Claims Against Love Insurance

#### A. Breach of Contract

Under Texas law, the elements for a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted). "The elements of a contract, express or implied, are identical." *Univ. Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ)). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp. v. Hi–Class Bus. Sys.*, 184 S.W.3d 760, 769-70 (Tex. App.—Dallas 2005, pet. denied). When an agent fails to procure insurance, the damages are measured by "the amount that would have been due under the

insurance policy [if] it had been obtained." *Smith-Reagan & Assocs., Inc. v. Fort Ringgold Ltd.*, No. 04-13-00608-CV, 2015 WL 1120398, at *1 (Tex. App.—San Antonio, Mar. 11, 2015, pet. denied) (citing *Scott v. Conner*, 403 S.W.2d 453, 457 (Tex. Civ. App.—Beaumont 1966, no writ)). This amount may be different than the cost of repairing the building; instead, it is the amount that would have been due had the insurance agent procured the insurance. *See Taylor v. Republic Grocery*, 483 S.W.2d 293, 296 (Tex. Civ. App.—El Paso 1972, no writ).

The parties agree that they have a valid implied contract and that Plaintiff performed by paying the premiums for both insurance policies. Whether Plaintiff is entitled to summary judgment on his breach of contract claim turns on whether there is a genuine dispute of material fact that Love Insurance breached the implied contract between the parties, and the amount of damages, if any, Plaintiff sustained as result of the alleged breach. The real issue in this case is whether Love Insurance obtained $975,000 of insurance coverage for Henley, although the parties discuss each policy separately. The court discusses, although not necessary, each policy separately because the parties briefed the issue in this manner.

  **B.**  **$475,000 Insurance Policy**

Love Insurance concedes that even though Plaintiff paid his premium, it never procured the excess loss policy for $475,000. Hr'g Tr. vol. 1, 4. Plaintiff argues that this is a material breach of the implied contract, which required Defendant to procure $975,000 of insurance coverage. Defendant counters that its mere failure "to procure an excess policy does not get one to the liability aspect because of what the . . . legal liability is." Hr'g Tr. vol. 1, 10. Defendant explains that because liability is measured by what would have been due under the insurance policy if it had been obtained, a fact question remains as to whether the excess loss policy would have be

**Memorandum Opinion and Order - Page 7**

applicable to the damages the flood caused. *Id.* Defendant indirectly contends that if the excess loss policy would not have been applicable, then its failure to procure the excess coverage would not constitute a breach of the implied contract.

With respect to Defendant's argument that its failure to procure the $475,000 excess loss policy is not determinative of whether they breached the implied contract, Defendant has merged the breach analysis with the damages analysis. Defendant is incorrect in arguing that how liability is measured raises a fact question as to breach, as its failure to perform by not procuring nearly half of the agreed upon amount of insurance is a breach of the implied contract, which is independent of the potential amount of damages. Accordingly, there is no genuine dispute of material fact as to whether Love Insurance breached the parties' implied contract, in which Love Insurance agreed to obtain $975,000 in insurance coverage. The court, therefore, determines that as a matter of law Love Insurance breached the parties' implied contract.

Love Insurance argues that despite its failure to obtain the $475,000 excess policy, it did secure $500,000 of insurance coverage for the Sonoma Apartment buildings. Defendant's argument is a red herring that distracts from the real issue, which is that the parties implied contract required Love Insurance to obtain $975,000 of insurance coverage, and it breached that implied contract when it failed to perform as agreed. Nonetheless, the court will next consider Defendant's argument regarding the $500,000 primary insurance policy; however, this analysis necessarily leads the court to the same result, that is, Defendant breached the implied contract.

### C.     $500,000 Insurance Policy

Defendant argues that it obtained the insurance policy with respect to the $500,000 primary insurance and that ABI would not pay the policy, and that, therefore, a fact question remains as to

whether it is liable for paying that portion of the implied contract. Hr'g Tr. vol. 1, 17. Plaintiff counters that Defendant is attempting to improperly shift its liability to ABI, which was not a party to the implied contract between him and Love Insurance.

The court agrees with Plaintiff. Both parties agree that there was a meeting of the minds that Plaintiff would pay the premiums, which it did, in exchange for Defendant obtaining $975,000 worth of insurance. Hr'g Tr. vol. 1, 16-17. The policy that Defendant secured was defective. For example, Defendant admits that the policy requires a specific amount of insurance to be designated for each building; however, the application that Defendant submitted for the Sonoma Apartment Buildings did not do this. Hr'g Tr. vol. 1, 18. Love Insurance contends that any defect in the way it submitted the application to obtain the $500,000 primary insurance policy is a problem that ABI should have addressed. *Id*. Further, Love Insurance contends that a defect in the application does not "necessarily negate the fact that there is a contract [for flood insurance between Henley and ABI]." *Id*. Love Insurance, therefore, contends that despite any defects in the application and policy, a genuine dispute of material fact exists as to whether "one can only have one policy per address or whether one can have two to ten buildings within a schedule[d] policy." Hr'g Tr. vol. 1, 11.

Despite Defendant's admission that the application submitted did not comply with the requirements for a valid application, there is also ample evidence to support such finding in the record. The record contains evidence that one building is covered per one policy unless the applicant is submitting a scheduled building policy. For example, the last page of the application for insurance that Defendant submitted states in uppercase letters "PLEASE NOTE: ONE BUILDING PER POLICY – BLANKET COVERAGE NOT PERMITTED." Def.'s App. 12, ECF

22.   Moreover, FEMA General Rules state that "scheduled building policies" may cover two to ten buildings, and that type of policy "requires a specific amount of insurance to be designated for each building." *Id*. at 76.  The flood policy application that Love Insurance submitted to ABI did not contain a separate policy per each building; and it did not specify the amount of insurance to be designated for each building in a scheduled building policy.  As a result of these omissions, Plaintiff did not receive the flood insurance coverage for which it contracted with Defendant.  Any dispute that Love Insurance may have with ABI is not before this court.

For these reasons, reasonable minds would not differ in determining that Defendant breached its contract with Plaintiff, as it did not secure the $500,000 policy; therefore, there is no genuine dispute of material fact as to whether Defendant breached its implied contract to secure a total of $975,000 worth of insurance.  Next the court turns to whether a genuine dispute of material fact exists with respect to the amount of damages that Plaintiff should be awarded as a result of Defendant's breach.

### D.     Damages

Defendant contends that the amount of damages hinges on a fact question regarding the parameters of the insurance policies had they been acquired.  Defendant further argues that Plaintiff has not presented summary judgment evidence as to what the policies would have covered.  Specifically, Love Insurance contends that there are a number of matters unknown, namely, "What are the terms of that policy? Under what circumstances would it kick in? What would it actually cover? Are there exclusions to that policy because they have to be under FEMA?" Hr'g Tr. vol. 1, 10.

**Memorandum Opinion and Order - Page 10**

Plaintiff counters that he has presented evidence of the amount of damages, as he hired James Amos, a public adjuster with National Adjustment Services, Inc., to do a full adjustment of the flood damages. Mr. Amos calculated the total damages for all of the buildings is $847,520.10. Plaintiff has already recovered $112,054.78 for one of the buildings; therefore, he contends that he is entitled to a judgment of $735,465.32 for the flood damage. Plaintiff also contends that he is entitled to economic damages to cover the cost of hiring National Adjustment Services, Inc., prejudgment interest, and attorney's fees.

The court determines that there is a genuine dispute of material fact as to the amount of damages, as there is no evidence on the record to suggest what the policies would have covered or excluded had they been attained. "A starting point for this calculation would have been the terms of a policy provision that provided such coverage during the relevant time period." *Smith-Reagan & Assocs., Inc.*, 2015 WL 1120398, at *2 (citing *Nat'l Fire Ins. Co. of Pittsburgh, Pa. v. Valero Energy Corp.*, 777 S.W.2d 501, 509-10 (Tex. App.—Corpus Christi 1989, writ denied); *Gibbs v. Allstate Ins. Co.*, 386 S.W.2d 606, 609 (Tex. Civ. App.—Fort Worth 1965, writ ref'd n.r.e.)). Neither party has embarked on this type of analysis. The record, therefore, contains no evidence as to the amount that would have been due had Defendant performed. This amount may be different from the amount of total damages that the flooding caused. Moreover, Plaintiff's Rule 702 opinion witness, Mr. Amos, did not consider the underlying policies when he calculated damages, because it was unclear what would have been covered had Defendant performed on the contract (Pl.'s Sur. App. 4-7, ECF. 53). His calculation does not take into consideration what would have been due, and a genuine dispute of material fact exists as to that issue; therefore, the court will deny summary judgment with respect to damages.

**Memorandum Opinion and Order - Page 11**

## VI. Conclusion

For the reasons stated herein, the court concludes that there is no genuine dispute of material fact as to whether Love Insurance breached the implied contract between it and Plaintiff, in which Love Insurance agreed to provide a total of $975,000 of insurance coverage for the Sonoma Apartment buildings. Defendant, therefore, as a matter of law is liable for its breach of the parties implied contract; however, the amount of damages, if any, that the breach caused is in dispute. The court, therefore, **grants** Plaintiff's Motion for Summary Judgment with respect to the breach of contract claim; and **denies** it with respect to the amount of damages to which Henley is entitled. Plaintiff has indicated that he will likely elect the breach of contract remedy and nonsuit the rest of his claims. Plaintiff is instructed to inform the court by **March 6, 2017**. If Plaintiff nonsuits his remaining claims, then the parties are directed to file a written submission and inform the court of the amount of time to try the issue of damages by **March 10, 2017**. The parties are also to provide the court by **March 10, 2017**, three separate weeks in three separate months in which they are available to try this action with respect to damages.

**It is so ordered** this 24th day of February, 2017.

                                        Sam A. Lindsay
                                        United States District Judge