IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HUDSON HENLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO. 3:15-CV-03078-L |
| v. | § | |
| | § | |
| LOVE INSURANCE GROUP, LLC, AND | § | |
| AMERICAN BANKERS INSURANCE | § | |
| COMPANY OF FLORIDA, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT LOVE INSURANCE GROUP, LLC'S MOTION IN LIMINE AND
<u>BRIEF IN SUPPORT</u>**

        Respectfully submitted,


        <u>*/s/ Jonathan D.F. Nelson*</u>
        Jonathan D.F. Nelson - State Bar No. 14900700

        JONATHAN D.F. NELSON, P.C.
        1400 West Abram Street
        Arlington, Texas 76013
        Telephone: 817-261-2222
        Facsimile : 817-274-9724
        jnelson@hillgilstrap.com

        ATTORNEY FOR DEFENDANT LOVE
        INSURANCE GROUP, LLC

## I.   INTRODUCTION

1.   Pursuant to the Scheduling Order paragraph 5.a., Docket No. 7, Plaintiff's deadline to file a written designation of the name and address of each expert witness who will testify at trial and to otherwise comply with Rule 26(a)(2) was June 6, 2016.  Docket No. 7.  Defendant's deadline to file a written designation of the name and address of each expert witness who will testify at trial and to otherwise comply with Rule 26(a)(2) was July 5, 2016.  Docket No. 7.

2.   For the reasons described in Defendant Love Insurance Group, LLC's Daubert Motion to Disqualify Testimony of James Amos and Brief in Support, Docket No. 35 (the "Daubert Motion"), the Court should deny any expert or other testimony of James Amos.  The Daubert Motion (Docket No. 35) and Love's related Reply (Docket No. 40) are incorporated as if fully stated herein.  Supporting material is also found in Love's Appendix in Support of the Daubert Motion (Docket No. 36) and citations to said appendix herein are in the form "APPX [page #s]".

3.   On March 24, 2017, the Court entered the First Amended Scheduling Order, which did not address deadlines for disclosing expert witnesses, but did re-set the Trial Date to May 17, 2017, and state that "[u]nless otherwise ordered or specified herein, all limitations and requirements of the Federal Rules of Civil Procedure, as amended, must be observed."  Docket No. 58 page 1. Rule 26(a)(2)(D)(i) requires, absent a stipulation or a court order, that parties make their expert disclosures at least 90 days before the Trial Date.

4.   On March 27, 2017, Plaintiff filed "Supplemental Rule 26 Expert Disclosures", in which Plaintiff's designated expert James Amos ("Amos") drafted a supplemental report, purportedly to address issues raised by the Court's summary judgment ruling.   Docket Nos. 59; 59-1.

## II. SUMMARY OF ARGUMENT

5. Plaintiff's damages, if any, are capped by the amount the policy would have covered. Determination of the amount of damages the un-procured policy would have covered—there is no competent testimony on this topic.

6. Love filed a *Daubert* motion to exclude the testimony and report of James Amos—Plaintiff's designated expert. *See* Docket No. 35. Love respectfully urges the Court to issue a ruling on its *Daubert* motion.

7. By filing his supplement to report on March 27, 2017, Docket Nos. 59, 59-1, Amos changed his opinion rather than merely supplementing his opinion. Love did not have the opportunity to cross-examine Amos in deposition on his newly altered opinion. Love also did not get the opportunity to designate a counter-expert to address Amos' newly changed opinion. The Court has taken a strict approach regarding timing pursuant to the Scheduling Order. See Docket No. 42 (denying Love's Motion for Leave). Amos should not be permitted to change his purported expert testimony out-of-time and this close to trial.

## III. ARGUMENT AND AUTHORITIES

### A. Standards for the Admissibility of Expert Testimony.

8. Pursuant to Federal Rule of Evidence 104(a), this Court may evaluate the admissibility of expert evidence in the context of a motion in limine or other proper pre-trial proceeding. The standard for admissibility of expert testimony is found in Federal Rule of Evidence 702, along with the standards set forth in *Daubert* and its progeny. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

9. Under *Daubert*, the evidence must be relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). To be relevant, the evidence must relate to an issue in the case and assist the trier of fact in understanding evidence or a fact. *Id.* at 597. In addition, the Court must determine whether the evidence is based upon a reliable scientific theory or technique. *See id*. Among other factors, courts ask whether the theory or technique (1) has been tested; (2) has been subject to peer review or publication; (3) has been shown to be reliable; (4) has an known error rate; and (5) is generally accepted, and to what degree. *Id*.

**B. Damages for failure to procure insurance requires competent evidence concerning how much the un-procured policy would have paid in damages—Amos is not qualified to provide such testimony and fails to so testify.**

10. The standard for damages in a failure to procure insurance case is the difference between the available coverage under the policy as requested and the available coverage under the policy as procured. Generally, the measure of liability for a broker or agent's failure to procure insurance is the amount that would have been paid under the un-procured insurance policy, provided it had been obtained. *Smith-Reagan & Associates, Inc. v. Fort Ringgold Ltd.*, 2015 WL 1120398 at *1-2 (Tex.App.---San Antonio, March 11, 2015, pet. denied) (evidence of how categories of damages would have been calculated and covered under the un-procured policy is requires; the starting point for calculation of damages is the terms of the policy provision); *Scott v. Conner*, 403 S.W.2d 453, 457 (Tex.Civ.App.—Beaumont 1966, no writ) (plaintiff could not recover value of house at time of fire; instead, plaintiff's damages measured by amount cancelled/un-replaced insurance would have covered); *Taylor v. Republic Grocery*, 483 S.W.2d

293, 296 (Tex.Civ.App.—El Paso 1972, no writ) (plaintiff could not recover amount to repair building; instead, plaintiff's damages measured by amount plaintiff would have been due under policy if policy had been obtained).

11. Calculating damages for failure of a broker/agent to obtain insurance requires analysis and proof of what would be, and would not be, covered under the un-procured policy, and how much the un-procured insurance policy would have paid on the claim. *See id.*; s*ee also Offshore Production Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224 (5th Cir. 1990); *Insurance Alliance v. Lake Texoma Highport, LLC*, 452 S.W.3d 57 (Tex.App.—Dallas 2014, pet. denied) (requiring evidence that the property damages, excluding overwater electrical, were within the coverage of the policy plaintiff sought, but which defendant failed to procure.).

12. In *Lake Texoma Highport*, an owner of a flood-damages marina sued an insurance broker and insurance carrier after discovering that the insurance policy actually procured had inferior coverage compared to the insurance policy plaintiff had requested. The plaintiff had requested a $15 million blanket coverage policy with replacement cost coverage, but instead obtained (through its broker) a much more limited $15 million scheduled policy with sub-limits and coinsurance penalties. *Lake Texoma Highport*, 452 S.W.3d at 63.

13. The *Lake Texoma Highport* court upheld the damages awarded by the jury given the following jury charge, in relevant portion:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [plaintiff] for its damages, if any, that resulted from such conduct?
> ....
> Consider the following elements of damages, if any, and none other.
>
> Answer separately in dollars and cents for damages, if any.
>
> a. The amount of coverage that would have been available under the 2007 policy sought by [plaintiff] to repair and/or replace the overwater electrical system

   damages in the flood, less the amount of coverage that was provided by the 2007 policy actually obtained.

   Answer: 0

   b. The amount of coverage that would have been available under the 2007 policy sought by [plaintiff] to repair and/or replace the property damaged in the flood, other than the overwater electrical system, less the amount of coverage that was provided by the 2007 policy actually obtained.

   Answer: 8,300,000.00

   c. The amount of coverage that would have been available to reimburse [plaintiff's] Business Interruption damages resulting from the flood under the 2007 policy sought by [plaintiff], less the amount of coverage that was provided by the 2007 policy actually obtained.

   Answer: 438,598.00

*Id*. at 65.  The plaintiff argued there was no evidence to support the jury's answers to 'b' and 'c' above.  *Id*. at 65.

   14.   In *Lake Texoma Highport*, the appellate court examined whether plaintiff proved, through competent evidence, the amount of damages plaintiff would have recovered for its losses under the policy it sought and the amount of damages recoverable for its losses under the actual policy written.  *Id*. at 70-72.  These are necessary pieces of information for damages in a failure to procure insurance case, and require analysis of the policy obtained and the policy sought but not obtained.  *See id*. at 70-72.  As a component of damages, the jury charge asked the jury to determine the amount of coverage that would have been available under the policy sought to repair and/or replace property damages in the flood, less the amount of coverage that was provided by the policy obtained.  *Id*. at 64-65.  As a component of damages, the jury also determined the amount of coverage that would have available to reimburse plaintiff's business interruption damages under the policy sought, less the amount of business interruption coverage under the policy obtained.  *Id*.

at 65.

15.  In *Lake Texoma Highport*, the court also addressed a specific subset of damages suffered—business interruption damages—by looking to how much coverage would have been provided for that specific type of damages (business interruption) under the policy sought, less the amount of business interruption damages coverage provided by the policy actually obtained.  *Id*. at 72.  Plaintiff was required to prove its business interruption damages, and the amount thereof, would have been covered under the policy sought.  *Id*. at 72.  The appellate court upheld the jury's finding on business interruption damages, because evidence was presented of precisely how much the policy sought would have covered and paid for business interruption damages, less the business interruption coverage under the policy actually obtained.  *Id*. at 72.

16.  In this case, Plaintiff simply submitted an estimate of all repair costs, without regard to what would, and would not be, covered by the policy.  This approach is sorely lacking.  Plaintiff designated James Amos as his damages expert.  Rather than properly analyze how much of, and which components of, damages would have been covered under the allegedly un-procured policy (and subtracting off the amount under the undisputed existing policy), Amos simply went through the apartments and estimated repair costs to the property.  Amos Depo. 9:15-10:3; 115:25-116:16, 116:22-117:15, APPX 000006-7, 000015.  In his damages model, Plaintiff takes no account whatsoever of which repair items would, and would not, be covered under the allegedly un-procured policy.  Id.; Amos Depo. 118:25-119:2, APPX 000016.

17.  Amos readily admits he is no coverage expert.  Plaintiff has not designated any coverage expert.  In fact, Amos had no idea what was and was not covered under the flood policy— neither the FEMA flood policy nor what any excess policy would cover.  Amos stated that he "could care less about what the policy states" and wrote his flawed report without regard to whether

the policy covered all (or even some) of the damages. Amos Depo. 118:25-119:2, 145:23-147:6, APPX 000016, 000018-19.

18. Because Plaintiff failed to follow the proper damages model, and utterly fails to prove what would and would not be covered by the allegedly un-procured policy, his damages model is fatally flawed. *See, e.g.*, *Smith-Reagan*, 2015 WL 1120398 at *1-2 (evidence of how categories of damages would have been calculated and covered under the un-procured policy is required); *Scott*, 403 S.W.2d at 457 (plaintiff could not recover value of house at time of fire; instead, plaintiff's damages measured by amount cancelled/un-replaced insurance would have covered); *Taylor v. Republic Grocery*, 483 S.W.2d at 296 (plaintiff could not recover amount to repair building; instead, plaintiff's damages measured by amount plaintiff would have been due under policy if policy had been obtained); *Offshore Production Contractors, Inc.* (determining damages in a failure to procure insurance case requires a careful examination of the policy to determine what would have, and would not have, been covered); *Lake Texoma Highport, LLC*, 452 S.W.3d 57 (evidence that the property damages, including each component thereof, were within the coverage of the un-procured policy is required).

19. Plaintiff's fatally flawed damages model, and lack of competent proof, doom Plaintiff's claims.

   **C. Even considering Amos' supplemental report, Amos remains unqualified as an expert on insurance coverage and causation; he lacks any knowledge or expertise regarding the extent of the insurance policy and whether the flood insurance that would have been procured covers the items he estimated. Therefore, his testimony is unreliable, irrelevant, and inadmissible.**

20. In Amos' supplemental report, Docket No. 59-1, Amos states that he has now belatedly reviewed the National Flood Insurance Program General Property Form Standard Flood Insurance Policy pertaining to the property at issue in this case. Docket No. 59-1. Amos, also

claims that "[b]ased on my reading and understanding of this policy, my 30 plus years' experience estimating damages/reviewing insurance policies I have removed two items from the estimate I prepared July 8, 2015." Docket No. 59-1.

21. Amos is an un-licensed estimator. Amos Depo. 8:1-9, APPX 000006. Amos did not consider what the insurance policy at issue stated or covered, rather, all he did was estimate costs. Amos Depo. 9:15-10:3; 115:25-116:16, APPX 000006-7, 000015. In fact, Amos admitted that (prior to the summary judgment) he had never even seen the policy, and did not know what allegedly damaged items were covered and what items were not covered. Amos Depo. 116:22-117:15, APPX 000015. Amos bluntly stated "I just wrote an estimate for the damages. I could care less about what the policy stated."[1] Amos Depo. 118:25-119:2, APPX 000016.

22. Amos merely removed two items from his original estimate. Amos failed to explain the rationale for his new exclusions, and why the items that were not excluded would have been covered under the policy—Amos provided no discussion or reasons for the coverage of the non-excluded items in his estimate. Docket No. 59-1.

23. Amos further testified that he did not even know that he was writing an estimate to present to an insurance company; rather he simply included all of the damages, without regard to whether the policy covered them or not. Amos Depo. 145:23-147:6, APPX 000018-19. Amos' supplemental report does not cure this defect.

24. Amos' new generic allegation that he has "30 plus years' experience" which now vaguely and allegedly includes "reviewing insurance policies" does not suffice for qualifying Amos as an expert on flood insurance policies and what such policies do and do not cover. Amos'

---

[1] Amos should have cared what the policy stated and covered—such information would be crucial to any expert testimony relating to damages were Love found liable for allegedly not procuring the policy.

generic statement does not qualify him, in any way, as an expert on policies. Fed. R. Civ. P. 26(a)(2)(B)(iv) (requiring a statement of the witness's qualifications, including a list of all publications authored in the previous 10 years). Here, Amos has provided no resume, CV, or other statement of qualifications that would come remotely close to qualifying him as an expert on flood insurance policy coverage. Indeed, this is a man who flippantly "could care less about what the policy stated." Amos Depo. 118:25-119:2, APPX 000016. Therefore, Amos should not be permitted to testify.

25. Further, Amos' embarrassingly vague statement that the deductible(s) "should probably be based on the corrected policies ultimately obtained after the flood" evidences Amos' lack of knowledge and conviction regarding insurance policies and amounts to little more than a guess—this is not competent expert testimony. Docket No. 59-1. Merely alleging that he has been "reviewing policies" for a number of years does not make Amos a qualified expert on coverage.

26. The relevance prong of Rule 702 requires the proponent of expert testimony to demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue. *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). How much of the damages are covered by the flood insurance policy (whether such policy was secured or not) is central to this lawsuit. Assuming, arguendo, the flood policy was not secured by Love, then the central damages issue is how much the flood policy would have covered had Love properly secured the insurance policy. Amos' estimates—divorced entirely from what the insurance policy does and does not cover—are irrelevant to this lawsuit.

27. In this case, Amos fails to establish that his estimate is an accurate or reliable documentation of the damage caused to the property <u>as a result of the flood and subject to coverage</u>

under the flood policy. As such, Amos' testimony and Report are not reliable or helpful to the fact-finder in this lawsuit. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (U.S. 1999); *Daubert*, 509 U.S. 579. Therefore, Amos should not be permitted to testify and the Amos Report should be stricken. *See id*.

**D. Plaintiff's untimely disclosure of a policy coverage expert prejudiced Love.**

28. To the extent Amos was qualified as a flood insurance policy coverage expert (and he is not), his untimely disclosure on March 27, 2017 of his purported status as such an expert works prejudice against Love. *See* Docket No. 59-1. Had Amos been timely designated as a flood policy coverage expert, Love would have designated a counter-expert on said topic. Knowing that Plaintiff failed to timely designate a flood insurance policy expert, Love decided not to designate an opposing expert on said topic.[2]

29. If Amos is allowed to testify, despite his lack of qualifications as a policy coverage expert, then the trial should be continued and a new scheduling order should be entered, permitting Love to locate and designate a counter-expert on flood insurance policy coverage.

## III.   RELIEF REQUESTED

For the foregoing reasons, Love respectfully requests that the Court grant this Motion in Limine, deny the admission into evidence of any expert or other testimony or report of James Amos, and grant such other and further relief to which Love is justly entitled.

DATED:  May 3, 2017

                                                 Respectfully submitted,

---

[2] To the extent Plaintiff requests leave to re-designate Amos (or some other person) as a policy expert, Love respectfully submits that such request be denied. Love was denied its request to amend its answer, and Plaintiff should not be given leave to cure its fatally defective expert designations.

                */s/ Jonathan D.F. Nelson*
                Jonathan D.F. Nelson - State Bar No. 14900700
                JONATHAN D.F. NELSON, P.C.
                1400 West Abram Street
                Arlington, Texas  76013
                Telephone:  817-261-2222
                Facsimile :  817-274-9724
                jnelson@hillgilstrap.com
                ATTORNEY FOR DEFENDANT LOVE INSURANCE GROUP, LLC

## Certificate of Conference

   The undersigned certifies that on May 3, 2017, counsel for Love conferred with counsel for Plaintiff concerning the relief requested in this Motion.  Plaintiff opposes the relief requested herein, therefore, this Motion is submitted to the Court for determination.

                */s/ Jonathan D.F. Nelson*
                Jonathan D.F. Nelson

## Certificate of Service

    This is to certify that a true and correct copy of the foregoing instrument has been served by ECF-electronic delivery and/or first class prepaid U.S. Mail on this 19th day of April 2017 to:

   R. Lane Addison
   rladdison@henleylawpc.com
   Henley & Henley, P.C.
   3300 Oak Lawn Avenue, Suite 700
   Dallas, Texas 75219

                */s/ Jonathan D.F. Nelson*
                Jonathan D.F. Nelson