# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| HUDSON HENLEY GROUP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:15-CV-3078-L** |
| | § | |
| LOVE INSURANCE GROUP L.L.C., | § | |
| | § | |
| Defendant. | § | |

## AMENDED MEMORANDUM OPINION AND ORDER

This Amended Memorandum Opinion and Order ("Amended Opinion") **supersedes** and **vacates** the Memorandum Opinion and Order issued by the court on March 31, 2018. This Amended Opinion **modifies** the court's analysis regarding the $14,000 that Hudson Henley Group seeks in damages for deductibles, **addresses** Plaintiff's Motion in Limine, **directs** the parties to brief the court as to whether a prevailing party is entitled to interest (prejudgment and postjudgment), and **corrects** several typographical errors.

Before the court are Plaintiff Hudson Henley Group ("Henley" or "Plaintiff") Proposed Findings of Fact and Conclusions of Law (Doc. 82), filed November 8, 2017; and Defendant Love Insurance Group L.L.C. ("Love") Proposed Findings of Fact and Conclusions of Law (Doc. 83), filed November 13, 2017. Also before the court are Plaintiff's Motion in Limine (Doc. 67), filed May 3, 2017; and Defendant Love Insurance Group, LLC's Motion in Limine ("Love's Motion in Limine") (Doc. 70), filed May 3, 2017. After considering the motions, responses, replies, arguments of counsel made during the bench trial conducted on May 17, 2017, record, and applicable law, the court **denies in part** and **grants in part** Plaintiff's Motion in Limine (Doc.

67), as herein set forth; and **denies** Defendant Love Insurance Group, LLC's Motion in Limine (Doc. 70), as herein set forth.

The court's findings of fact and conclusions of law are made pursuant to Rule 52(a) of the Federal Rules of Civil Procedure ("Rule 52"). In making these findings and conclusions, the court considered testimony during a one-day bench trial held on May 17, 2017.[1] For the reasons that follow, the court **finds** and **concludes** that Henley is entitled to recover on its claim of breach of contract against Love in the amount of **$837,367.65**.

## I.  Procedural Background

Henley filed this action against Love and American Bankers Insurance Company of Florida ("ABI") on August 18, 2015, in the 14th Judicial District of Dallas County, Texas, for breach of contract, negligent misrepresentation, promissory estoppel, and breach of fiduciary obligations in connection with his purchase of "FEMA[2] flood insurance" for the Sonoma Apartment complex

---

[1] In preparing this memorandum opinion and order regarding the findings of fact and conclusions of law, the court carefully considered the trial testimony and exhibits and applied the standard in this Circuit for findings of fact and conclusions of law. *See Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (discussing the standard for findings and conclusions under Rule 52). In accordance with that standard, the court has not set out its findings and conclusions in "punctilious detail" or slavishly traced the claims issue by issue and witness by witness, or indulged in exegetics, parsing or declaiming every fact and each nuance and hypothesis." *See id*. The court, instead, has limited its discussion to those legal and factual issues that form the basis for its decision. *Id*. The facts contained herein are either undisputed, or the court has made the finding based on the credibility or believability of each witness. In doing so, the court considered all of the circumstances under which the witness testified, including: the relationship of the witness to Henley or Love; the interest, if any, the witness has in the outcome of the case; the witness's appearance, demeanor, and manner of testifying while on the witness stand; the witness's apparent candor and fairness, or the lack thereof; the reasonableness or unreasonableness of the witness's testimony; the opportunity of the witness to observe or acquire knowledge concerning the facts to which he or she testified; the extent to which the witness was contradicted or supported by other credible evidence; and whether such contradiction related to an important factor in the case or some minor or unimportant detail. When necessary, the court comments on the credibility of a witness or the weight to be given to a witness's testimony. Where appropriate, any finding of fact herein that should more appropriately be regarded as a conclusion of law shall be deemed as such, and vice versa.

[2] Federal Emergency Management Agency ("FEMA").

**Memorandum Opinion and Order – Page 2**

("Sonoma"). Pl.'s Orig. Pet. 3, 6. On September 22, 2015, ABI removed this action to federal court, contending that it arises under the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001, *et seq*. Love consented to removal of the action to federal court. On July 6, 2016, ABI was dismissed from this action with prejudice. Henley's remaining claims against Love included breach of contract, negligent misrepresentation, promissory estoppel, and breach of fiduciary obligations.

On December 1, 2015, after the parties filed their Joint Status Report, the court entered a scheduling order that included the following deadlines: amendment of pleadings and joinder of parties due by February 29, 2016; discovery due by September 2, 2016; dispositive motions due by September 16, 2016; Plaintiff's expert designations due by June 6, 2016; and Defendant's expert designations due by July 5, 2016. [3] On May 18, 2016, Henley filed his designation of experts and designated R. Lane Addison as a retained expert "on the attorney's fees incurred by plaintiff in this matter" and James Amos ("Amos") as a nonretained "public adjuster that reviewed the damages to plaintiff's property and put together an exhaustive estimated cost to repair the same." (Doc. 10). On July 5, 2016, Love requested an extension from July 5, 2016, to July 12, 2016, to file its expert designations, which was granted by the court. Love never filed any expert designations.[4] On September 16, 2016, Love filed a *Daubert* Motion ("*Daubert Motion*") (Doc.

---

[3] On March 24, 2017, the court entered a First Amended Scheduling Order that included the following deadlines: trial date of May 17, 2017; pretrial disclosures and objections due by April 19, 2017; any objections under Rules 32(a), 26(a)(3)(A), or 26(a)(3)(B) due by May 3, 2017; pretrial materials due by April 19, 2017; settlement conference due by April 19,2017; and objections to pretrial material and motions in limine due by May 3, 2017 (Doc. 58). The First Amended Scheduling Order did not address deadlines for disclosing expert witnesses.

[4] In response to Amos's expert report, Love had an expert opinion letter issued that controverted Amos's inclusion of several items in his report because a FEMA flood policy specifically excludes payment

**Memorandum Opinion and Order – Page 3**

35) to exclude Amos and argued that he was unqualified as an expert on insurance coverage and causation.

On July 6, 2016, Henley moved for summary judgment on his breach of contract claim (Doc. 12). On February 24, 2017, the court granted Plaintiff's Motion for Summary Judgment with respect to Henley's breach of contract claim; and denied it with respect to the amount of damages to which Henley was entitled (Doc. 54). The court concluded that there was no genuine dispute of material fact as to whether Love breached the implied contract between it and Henley, in which Love agreed to provide a total of $975,000 of insurance coverage for the Sonoma buildings. The court, however, concluded that the amount of damages, if any, that the breach caused was in dispute.[5]

On March 27, 2017, Henley filed Plaintiff Hudson Henley's Supplemental Rule 26 Expert Designations (Doc. 59), in which Amos drafted a supplemental report to address issues raised by the court's summary judgment ruling regarding damages. In response to Henley's supplemental expert designation, Love filed Defendant Love Insurance Group, LLC's Motion in Limine (Doc. 70) ("Defendant's Motion in Limine"), in which Love reiterated arguments made in its *Daubert Motion* to disqualify Amos's testimony.

---

on fences. *See* Pl.'s Post Trial Br. 4; Ex. 1, Doc. 81. Amos conceded that the issues raised in Love's expert opinion letter were correct, and he made the corrections in his supplemental report submitted on March 27, 2017.

[5] The court incorporates by reference its findings and conclusions set forth in its memorandum opinion and order entered on February 24, 2017 (Doc. 54) as if repeated herein verbatim.

**Memorandum Opinion and Order – Page 4**

## II. Motions in Limine

### A. Defendant's Motion in Limine[6]

In its motion, Love urged the court to issue a ruling on its *Daubert Motion* and fully incorporated it and Defendant Love Insurance Group, LLC's Reply to Plaintiff's Response to Love's Motion to Strike Expert Opinion (Doc. 40) into Love's Motion in Limine (Doc. 70) as if repeated therein verbatim. The court now addresses the *Daubert Motion*.

#### 1. Amos's Qualifications

In its *Daubert Motion*, Love contends that Amos failed to satisfy the *Daubert* standard for admissibility of expert evidence and that Amos's testimony and report are not reliable or helpful to the trier of fact in determining damages in this case because he did not look at the unprocured policy when making his initial estimates. *See* Def.'s Mot. in Limine 6-7. Specifically, Love contends that Amos should be disqualified from giving expert testimony at trial for the following reasons:

> (1) Amos is unqualified as an expert on insurance coverage and causation. He lacks expertise regarding the extent of the insurance policy and whether the flood insurance covers each item he estimated. Therefore, his testimony is unreliable, irrelevant, and inadmissible;
>
> (2) Amos' testimony and report are based on faulty assumptions. He assumed all of the itemized things needed to be replaced, including numerous items in his estimates that were far above the waterline and were not damaged by the flood—therefore, his testimony is inherently flawed;
>
> (3) Amos failed to follow proper methodology, and even contradicted the methodology designated by Plaintiff—therefore, his testimony is unreliable;
>
> (4) Amos failed to consider the actual costs of the repairs that have been made—therefore, his testimony is based upon insufficient facts or data; and

---

[6] Henley's counsel and defense counsel both renewed each objection made in their respective motions in limine during the bench trial.

**Memorandum Opinion and Order – Page 5**

> (5) Amos received a percentage of his estimated repair amount, thereby rendering him biased

Def.'s Daubert Mot. 3.

In Plaintiff's Response to Love's Motion to Strike Expert Opinion (Doc. 38), Henley contends that the standard for *Daubert* admissibility focuses on relevancy and reliability and not the factual bases of Amos's opinion. For that reason, Henley contends that Amos should not be excluded as an expert witness because Love's challenge to Amos's factual bases should have been addressed on cross-examination. Henley further contends that Amos is a qualified expert under *Daubert* because his "estimate is a reliable estimate of the damages caused by the flood, based on insurance industry standards for evaluating property damages." Pl.'s Resp. 4-7.[7]

In Love's Motion in Limine, it further argues that Amos is unqualified to provide testimony concerning how much the unprocured policy would have paid in damages because Amos is designated as a "damages" expert and not a "coverage" expert. In Plaintiff's Response to Love's Motion in Limine (Doc. 71), Henley argues that the motion contains "half-truths" and "material omissions" regarding Amos's experience and qualifications that should not disqualify him as an expert witness. Pl.'s Resp. to Love's Mot. in Limine. 2-3.

The Federal Rules of Evidence provide that a court "must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Fed. R. Evid. 104(a). The rules provide the following guidance on the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[7] In Love's Reply (Doc. 40), it reiterates arguments made in its initial motion regarding Amos's qualifications.

**Memorandum Opinion and Order – Page 6**

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Further, the Court clarified that the *Daubert* gatekeeping function applies to all forms of expert testimony, not just scientific. *Kumho Tire Co. v. Carmichael* 526 U.S. 137, 141 (1999). The district court fulfills its role as gatekeeper by screening the proposed evidence and evaluating it in light of the specific circumstances of the case to ensure that it is reliable and sufficiently relevant to assist the trier of fact in resolving the factual disputes. *Daubert,* 509 U.S. at 592-93. The Fifth Circuit on more than one occasion has reminded district courts of their important gatekeeping functions. *See Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016); *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986) ("Our point is that the ultimate issue in such cases can too easily become whatever an expert witness says it is, and trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury. Stated more directly, the trial judge ought to insist that a proffered expert bring to the [trier of fact] more than the lawyers can offer in argument.").

Henley stated the following regarding Amos in his Rule 26(a)(2) Disclosures:

James Amos – Not Retained
National Adjustment Services, Inc.
18601 Lyndon B Johnson Fwy #620
Mesquite, TX 75150
Phone: (972) 735-9949

**Memorandum Opinion and Order – Page 7**

Fax: (877) 371-4602

Mr. Amos is the public adjuster that reviewed the damages to plaintiff's property and put together an exhaustive estimated cost to repair the same.

Mr. Amos'[s] report was previously produced and bates labeled Pl. 001663-002053.

See Pl.'s Hudson Henley's Rule 26(A)(2) Expert Designations, filed May 18, 2016, (Doc. 10).

Based on the foregoing disclosure, it appears Amos was planning to testify under Rule 702 regarding damages to the Property as a result of the flood. Amos stated in his deposition that he has worked as an estimator and adjuster for thirty-two years. Pl.'s Resp. to Love's Motion to Strike Expert Op. 2; Pl.'s App 9-10. Over the thirty-two years, Amos worked as an independent adjuster for insurance companies for approximately twenty years and he handled numerous flood claims. *Id.* at 10. To prepare his estimates on damages to the Property, Amos used Xactimate, an industry standard software program used by major insurance companies to determine the cost of damages. *Id.* at 8. Amos has been using Xactimate for more than twenty years. *Id.*

At trial, Amos further testified at length, to his thirty-two years of experience as an estimator and adjuster. Trial Tr. 60-70. Amos testified that he attended Baylor University for two years and that he has substantial experience in estimating flood damages due to major hurricanes and pipe breaks. *Id.* Amos testified that he has worked as a catastrophe estimator for contractors and public adjuster for the last fifteen years. *Id.* at 60. He also testified to his substantial experience as an adjuster. He further testified that he adjusted approximately thirty FEMA flood polices and over 2,000 water claims. *Id.* at 66. Finally, Amos also testified that the computer-generated software program Xactimate and his methodology in using the software program are used as standards in the industry to compute damages. *Id.* at 73-75.

After reviewing Amos's deposition testimony and his testimony at trial, the court determines that Amos is qualified under Rule 702 to testify and express an opinion regarding damages to the Property as a result of the flood. The court further determines that Amos's testimony will help the court understand admitted evidence and determine to what extent the unprocured insurance policy would cover the damages incurred to the Property. Love argues that Amos's estimation on the amount of damages incurred as a result of the flood is not relevant to the disputed issue; however, the amount of damages incurred is necessary to determine what the unprocured policy would cover.

As noted above, on March 27, 2017, Henley filed Plaintiff Hudson Henley's Supplemental Rule 26 Expert Designations (Doc. 59), in which Amos drafted a supplemental report to address issues raised by the court's summary judgment ruling regarding damages. Love contends:

> Even considering Amos'[s] supplemental report, Amos remains unqualified as an expert on insurance coverage and causation; he lack any knowledge or expertise regarding the extent of the insurance policy and whether the flood insurance that would have been procured covers the items he estimated; therefore, his testimony is unreliable, irrelevant, and inadmissible.

Def.'s Mot. in Limine 7.

In its Motion in Limine, Love does not provide sufficient evidence to support any of its arguments regarding Amos's alleged lack of experience, faulty assumptions, or methodology.[8]

---

[8] In its Motion in Limine, Love cites extensively to the case of *Insurance Alliance v. Lake Texoma HighPort, LLC* to support its claim that Amos is not qualified to provide testimony concerning how much of the unprocured policy would have paid in damages. 452 S.W.3d 57 (Tex. App.—Dallas 2014, pet. denied). In *Insurance Alliance,* the owner of a flood-damaged marina brought an action against the insurance broker and insurance carrier after discovering that the insurance policy in place at time of flood was not a blanket coverage policy, which had been recommended, but rather was a scheduled policy which contained sublimits and coinsurance penalties. The court in *Insurance Alliance* addressed issues concerning a failure to procure a policy when the unprocured policy is unavailable because of an insurance broker's error. *Id.* at 70-72. Unlike the current dispute, the policy Love failed to procure is available; therefore,

**Memorandum Opinion and Order – Page 9**

Love contends that "Amos failed to establish that his estimate is an accurate or reliable documentation of the damage caused to the property as a result of the flood and subject to coverage under the policy." *Id.* at 10. Amos's original report, however, states that he made estimates based on water damage to the Property. Moreover, in his supplemental report, Amos reiterated his thirty-two years of experience as an estimator and adjuster and that he had the opportunity to look at the policy following his deposition. Love's arguments regarding Amos's qualifications to perform a job he has performed for more than thirty years are unpersuasive and unsupported by evidence in the record.

For all these reasons, the court determines that Amos has met the requirements under Rule 702 for expert testimony regarding damages to the Property as a result of the flood, and the court will deny Love's motion to strike Amos's expert testimony. The court, however, based on the foregoing expert disclosure, questions whether Amos may testify as to his adjustment of the damages after obtaining the unprocured policy, as Amos testified at his deposition that he did not view the policy and "could care less about what the policy states." Amos's Depo., Def.'s App. 16 (Doc. 36).

### 2. Expert Disclosure

#### a. Timeliness of the Expert Disclosure

Love also contends that Henley's disclosure of Amos as a "policy coverage expert" and not just a "damages expert" was untimely and prejudicial. Def.'s Mot. in Limine 10. In its Motion in Limine, Love contends that in Amos's supplemental report (Doc. 59), he changed his opinion

---

*Insurance Alliance* is inapplicable in determining whether Amos is qualified to provide testimony concerning how much the unprocured policy would have paid in damages.

**Memorandum Opinion and Order – Page 10**

rather than merely supplementing his opinion. *Id.* at 10. Love argues that it did not have the opportunity to cross-examine Amos on his newly altered opinion at his deposition or have the opportunity to designate a counter-expert to address Amos's new opinion regarding what the unprocured policy would have covered. *Id.* Love argues that, therefore, Amos should not be permitted to change his testimony. In response, Henley argues that Amos was properly disclosed as a "damages expert" and that his report was properly supplemented pursuant Federal Rule of Civil Procedure 26. Henley contends that the supplement "only made adjustments to what the recovery would be based on FEMA flood guidelines." Pl.'s Resp. to Love's Mot. in Limine 4.

Federal Rule of Civil Procedure 26(e)(2) states that parties must supplement expert disclosures when required. Rule 26(e)(2) provides that a "party's duty to supplement extends to information included in the report and to information given during the expert's deposition. . . . [and] additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). Henley filed his supplemental expert designation on March 27, 2017, almost a month before pretrial materials were due on April 19, 2017. Therefore, the court determines that Henley's supplemental disclosures were timely filed. For the reasons that follow, the court further determines that Love was not prejudiced by Henley's supplemental disclosures.

### b. Sufficiency of the Disclosure

In its *Daubert* Motion and Motion in Limine, Love also contends that Henley's expert disclosures are deficient under Rule 26 because Henley failed to meet the minimum standards for an expert report. Def.'s Daubert Mot. 8, Doc. 35; Def.'s Mot. in Limine 2, 11. Love contends that Henley should not be permitted to offer any expert testimony because he "merely disclosed Amos

**Memorandum Opinion and Order – Page 11**

as a public adjuster that reviewed the damages to the property and put together an estimated cost to repair the same." *Id.* The Federal Rules of Evidence state the following with regard to the disclosure of expert testimony:

> *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, [expert] disclosure[s] must be accompanied by a written report--prepared and signed by the witness--if the witness is *one retained* or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Although the record establishes that Amos was a nonretained expert, Amos did provide a written report. In any case, since Amos was a nonretained expert he was not required to submit a report, and Henley's disclosure requirements would be categorized under subsection C, which states the following:[9]

> *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

---

[9] Plaintiff's counsel conceded at trial that Amos's testimony should be categorized under Federal Rule of Civil Procedure 26(a)(2)(C). Trial Tr. 43: 2-3.

**Memorandum Opinion and Order – Page 12**

Fed. R. Civ. P. 26(a)(2)(C). During the bench trial, the parties and the court discussed, at length, the anticipated testimony of Amos, and the court expressed its concerns about whether Amos's expert designation was deficient. Moreover, Henley's counsel was asked numerous times on the record to identify "a summary of the facts and opinions to which [Amos] is expected to testify" as required under Rule 26, and Plaintiff's counsel stated "the summary and facts would be the four hundred page - - estimate report that [Amos] did." Tr. 43:14-15. The four-hundred page document Henley's counsel referred to is Amos's report regarding water damage to the Property as a result of the flood. After reviewing the record and the transcript, the court determines that Henley's expert designation is deficient. The four-hundred page report is not a summary of the facts and opinions to which Amos was expected to testify. Accordingly, Henley has failed to satisfy disclosure requirements under Rule 26.

In any event, although the court determines that Henley failed to satisfy the disclosure requirements under Rule 26, it determines that the admission of Amos's testimony still comports with the Federal Rules of Civil Procedure. The rules state the following with regard to a party's failure to disclose or supplement:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37 (c)(1).

In determining whether a failure to disclose or supplement is substantially justified or harmless, a court should consider the following four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."

*Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs, L.P.*, 648 F. App'x 414, 419 (5th Cir. 2016) (citing *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)). Henley's explanation for his failure to the satisfy disclosure requirements under Rule 26(a)(2)(C) was that he misunderstood the rule. Pl.'s Post Tr. Br. 4. While Henley's explanation is no cause for approbation, Amos's testimony is extremely important to the case, as it forms the basis of Henley's damages claim. *See Bitterroot Holdings*, 648 F. App'x at 419 (holding that the district court did not abuse its discretion in permitting evidence not properly disclosed under Rule 26 because the evidence was important to the case). Without Amos's testimony, the court would not be able to resolve the previously adjudicated breach of contract issue. Moreover, Love was not prejudiced by the admission of Amos's testimony. Henley timely filed Amos's supplemental expert disclosure nearly two months before the trial was set. Love did not request a continuance, which certainly could have cured the alleged prejudice, until it filed its Motion in Limine two weeks before the bench trial was set to take place. *See* Def.'s Mot. in Limine 10. Additionally, Love took Amos on *voir dire* during trial at the beginning of Henley's direct examination of Amos. *See* Trial Tr. 121-125. Further, Love's real objection is that Amos was not qualified. The court has determined that Amos was qualified to testify as an expert. Love places too much emphasis on having Amos excluded from testifying because of his alleged lack of qualifications, rather than obtaining a counter-expert to rebut his testimony. Because of the sequence of events, the court would have allowed Love to use such counter-expert at trial had such witness been called to testify on behalf of Love. Additionally, Love never provided any information to the court as to what a counter-expert could have offered in the way of testimony on damages or Amos's qualifications. Finally, Love had an expert review Amos's report in March 2017; Amos revised his report as a

result of that person's review; and the trial did not take place until May 17, 2017. Why Love did not use this expert at trial is unknown to the court. For these reasons, the court finds that Henley's failure to satisfy disclosure requirements under Rule 26 was harmless and **denies** Love's motion.

### B. Plaintiff's Motion in Limine

Henley contends that Love failed to plead any exclusion or exception to insurance coverage as affirmative defenses and requests the court to exclude any argument Love makes in this regard. This argument is discussed and later resolved by the court; and for the reasons discussed, the court **denies** this item of the motion in this opinion.

The second item of Plaintiff's motion relates to the "Cash Paid" damage model. As the court agrees with Henley as to how damages are to be determined, it **grants** this item of Plaintiff's motion.

## III. Findings of Fact and Conclusions of Law

### A. Findings of Fact

On November 17, 2014, Henley purchased the Sonoma in Dallas County, Texas. The apartment complex contained several buildings with eight different addresses: 704, 706, 708, 710, 712, 714, 716, and 718 N. Plymouth Road, Dallas, Texas 75211 (hereinafter "the Property").[10] Henley financed $975,000 of the $1.2 million purchase price through Happy State Bank, and, as a condition of the loan, Happy State Bank required him to obtain and carry $975,000 in flood insurance on the Property. Henley hired Love's agent John Sheetz ("Sheetz") to help him obtain

---

[10] Both parties have stated that the Sonoma consists of seven different structures with eight separate addresses; however, there appears to be some confusion as to how the buildings are counted. The parties agree that two of the separate buildings share an adjoining firewall and there is a separate building for the HVAC. The parties are unsure about whether to count the adjoining building as one or two buildings and whether to count the HVAC building. As the parties agree that all of the buildings were to be covered by insurance, this disagreement is of no moment.

**Memorandum Opinion and Order – Page 15**

flood insurance for the Property. On May 28, 2015, the creek behind Sonoma rose to a level sufficient to flood and damage the Property. Henley made a claim on the flood insurance policy and was informed that the FEMA managed flood insurance policy he purchased was incorrectly written as a single policy and, as such, would only apply to a single building.

B.  **Damages**

As the court noted, on February 24, 2017, it granted Plaintiff's Motion for Summary Judgment with respect to Henley's breach of contract claim, and denied it with respect to the amount of damages to which Henley was entitled (Doc. 54). The court concluded that there was no genuine dispute of material fact as to whether Love breached the implied contract between it and Henley, in which Love agreed to provide a total of $975,000 of insurance coverage for the Sonoma buildings. The court, however, concluded that the amount of damages, if any, that the breach caused was in dispute.

The standard for damages in a failure to procure insurance case "is the amount that would have been due under the insurance policy if it had been obtained." *Smith-Reagan & Associates, Inc. v. Fort Ringgold Ltd.*, 04-13-00608-CV, 2015 WL 1120398, at *1 (Tex. App.—San Antonio Mar. 11, 2015, pet. denied) (citations and internal quotations omitted). "A starting point for this calculation would [be] the terms of a policy provision that provided such coverage during the relevant time period." *Id.* at 2 (citing *National Fire Ins. Co. of Pittsburgh, Pa. v. Valero Energy Corp.*, 777 S.W.2d 501, 509-10 (Tex. App.—Corpus Christi 1989, writ denied)); *Gibbs v. Allstate Ins. Co.*, 386 S.W.2d 606, 609 (Tex. Civ. App.—Fort Worth 1965, writ ref'd n.r.e.)).

At trial, the evidence established that the flood caused $775,340.42 in actual damages to the Property. Trial Tr. 120:17; Pl. Ex. 11. Amos made these estimates using the industry standard

software program Xactimate. Trial Tr. 113:15-16. After considering relevant exhibits and objections, the court determines that this amount is supported by a preponderance of evidence.[11]

The evidence further establishes that, but for Love's breach, Henley had to retain a public adjuster to estimate damages to the Property for his insurance claim. Pl.'s Ex. 15. Henley seeks to recover the amount paid to Amos to estimate damages to the Property. The amount due to the public adjuster is eight percent of the recommended payment; therefore, Henley suffered an additional $62,027.23 in damages as a result of Love's breach of contract. Pl.'s Ex. 15.

Henley also contends that he is entitled to an additional $14,000 in actual damages, because Love failed to plead for any affirmative relief, and, therefore, lost the right to claim an offset for deductibles. The court disagrees.

Ordinarily, the failure of party to affirmatively plead an affirmative defense waives such defense. *Love of God Holiness Temple Church v. Union Standard Ins. Co.*, 860 S.W.2d 179, 181 (Tex. App.—Texarkana 1993, writ denied) (holding that if an insurer "relied on an exclusion or an exception in the insurance policy, it would have had to plead it as an affirmative defense."). In this case, Amos submitted a revised report, which the court admits as Plaintiff's Exhibit 11.[12] In the revised report, Amos adjusted the amount to $775,340.42, which reflects the removal of the $14,000 that he had originally included as part of Henley's damages. The revised report was made by Amos, who is Henley's expert, and he acknowledged that the $14,000 should be deducted. This acknowledgment by Henley's expert constitutes an admission by a party opponent. As this is an

---

[11] As there is no evidence in the record to reflect what would be the costs to repair the Property at current pricing, the court awards Henley no damages for such costs.

[12] To the extent that Love objects to the admission of Plaintiff's Exhibit 11, the court **overrules** such objection, as the revised report is crucial to the court's determination of the amount of damages and what should be excluded as damages.

**Memorandum Opinion and Order – Page 17**

admission, the court will not allow Henley to make this objection, especially since Plaintiff's Exhibit 11 was offered by Henley. Henley cannot arbitrarily select which portions of its own exhibit it wants to exclude in this case.

Moreover, and even more important, is that Henley misapprehends the law on this issue. The court previously noted that the standard for damages when an insurer fails to procure insurance is the amount that would have been due under the insurance policy had the insurance been obtained. In this case, the seven policies all state that the deductible is $2,000 per policy. Plaintiff's Exhibit 9, which is the General Property Form for a Standard Flood Insurance Policy, states, "When a loss is covered under this policy, we will pay only that part of the loss that exceeds the applicable deductible amount, subject to the limit of liability that applies." Pl.'s Ex. 9, VI(A). Henley, as a matter of law, was never entitled to claim any amount of the deductibles as damages. The plain language of the quoted provision of Plaintiff's Exhibit 9 precludes any determination by the court that Henley would be entitled to any portion of the $14,000. Henley's argument that Love failed to affirmatively plead "exclusion" is, therefore, quite beside the point. Further, Plaintiff's Exhibit 9 has a section titled "Exclusions" that is separate and apart from the section on "Deductibles," and the court agrees that if Love were asserting one of the matters excluded under the policy, it would have had to affirmatively plead such exclusion; however, that is not the issue facing the court. For this reason, Henley is not entitled to the $14,000 it seeks as damages.

## IV. Interest

Henley contends that he is entitled to prejudgment and postjudgment interest. The court determines this issue needs additional briefing. Existing precedent may indicate that a prevailing plaintiff is not entitled to receive prejudgment and postjudgment interest in an action to recover on

a flood insurance policy issued under the NFIA. Accordingly, the court **directs** the parties to brief whether a prevailing party is entitled to prejudgment and postjudgment interest in this case. The briefs may not exceed **seven pages**, and the briefs are due on **April 16, 2018**. Once the court has determined whether prejudgment and postjudgment interest is applicable, it will issue a final judgment.

V.     **Attorney's Fees**

As previously stated by the court during the trial of this action, any issue regarding attorney's fees will be handled postjudgment pursuant to Federal Rule of Civil Procedure 54(d)(2). As the court has issued this Amended Opinion and has not issued a final judgment, the court **denies without prejudice** Plaintiff's Motion Seeking Award of Attorney's Fees and Prejudgment Interest (Doc. 89).

VI.    **Conclusion**

For the reasons herein stated, the court **denies in part** and **grants in part** Plaintiff's Motion in Limine (Doc. 67) as herein set forth; and **denies** Defendant Love Insurance Group, LLC's Motion in Limine (Doc. 70) as herein set forth. The court **finds** and **concludes** that Henley is entitled to recover on its claim for breach of contract against Love in the amount of **$837,367.65**. The court, therefore, will enter judgment in favor of Henley in accordance with this Amended Opinion after the parties submit their briefs regarding interest.

**It is so ordered** this 4th day of April, 2018.

                                            Sam A. Lindsay
                                            United States District Judge